[Civ. No. 12428.   Second Dist., Div. One.   July 21, 1941.]

LILLY E. PREUITT et al., Respondents, v. VIRGINIA MARSHALL et al., Appellants.

Schell & Delamer for Appellants.

Jerome J. Mayo and Guy H. Hayes for Respondents.

DESMOND, J., *pro tem.*—This appeal is from a judgment, entered upon a jury verdict, in favor of plaintiffs, in an action in which damages were claimed for the death of Peyton L. Preuitt, who died of pneumonia at a Los Angeles hospital on July 4, 1938. One of the plaintiffs is the widow of deceased; the other two plaintiffs are his daughters.

It is claimed that errors arose in connection with admission and rejection of evidence; that the evidence offered is insufficient to sustain the verdict and judgment; also, that the injection of the element of insurance into the case by the plaintiff widow while a witness on the stand requires a reversal of the judgment; further, that error arose when the trial court denied a motion for a mistrial proffered immediately thereafter.

Appellants' principal exceptions to the rulings on evidence relate to hypothetical questions propounded by counsel for each side; citing in the one instance, the overruling of an objection by defendants to inclusion of the date June 10th as the date on which pneumonia developed, the claim being that there was no evidence to that effect; in the other, sus-

taining an objection to the inclusion by defendants of a reference to an injury to the left side of deceased. In view of testimony given on both these subjects, part of which we shall quote in this opinion, we do not feel that any prejudicial error resulted from these rulings.

On May 6, 1938, at about 4:00 o'clock p. m. on a clear day, the deceased was driving his automobile in a southerly direction on one of the streets of Los Angeles, accompanied by one of his employees. As he was traveling through an intersection his car was struck on the left side by another automobile which had approached the intersection in a northerly direction and then turned to the left within the intersection. Neither car traveled more than twenty or twenty-five feet from the point of impact, nor did either car overturn.

Mr. Olympius, the workman who was riding with Mr. Preuitt, stated on direct examination at the trial: ''Well, we were quite excited, more or less. I asked Mr. Preuitt, I said, 'Are you hurt?' and he said, 'Yes.' I said, 'Where?' He said, 'My side and chest, it hurts me.' So I started to get out and the door kind of jammed on the right side, but I got it opened; and when I got out I started to stand and my knees buckled up, and I almost fell down, I guess it was the jolt I got myself, and then I helped Mr. Preuitt out.''

The car which collided with the Preuitt automobile was being driven at the time of the accident by defendant Virginia Marshall and belonged to her father, co-defendant. A Miss Peterson was riding with her. There is nothing in the record to indicate that either of these young ladies was injured; but Mr. Preuitt called a doctor that evening who attended him and taped his chest, principally on the right side.

It may be noted at this point that the witness Olympius had signed a statement prior to the trial, which read as follows: ''Mr. Preuitt received no external cuts or injuries as far as I was able to see but I understand he sustained some cracked ribs on his left side.'' Also that Dr. Bidwell, an interne at the hospital where Mr. Preuitt was taken, in making a record of the history given by Mrs. Preuitt recorded that ''patient had had pneumonia on right side and pleurisy for three weeks . . . Complains of slight pain in left side . . . Had an automobile accident six weeks ago, was struck on left chest.''

Mrs. Preuitt testified that Dr. Gordon, the physician who was called to attend the deceased on the evening of the accident, "examined his chest and then taped him up and said he had a fractured rib . . . on the right side." She also stated that after a day or two he tried to return to his business "and he complained about pains in his right side."

Although, as may be seen from the foregoing, there was a suggestion that the deceased suffered some injury to his left side, it does not appear from the testimony of Dr. Frank R. Webb, chief autopsy surgeon of the county of Los Angeles, that he found any evidence on the date of the autopsy, July 6th, of injury to the left side, but according to his autopsy report: "Further examination showed the lateral wall of the right side of the chest showed in the deep tissues a faded out bruise and the ribs were intact. The area of the pleura opposite the bruised area was thickened and adherent to the right lung. The right lung was pneumonic with areas of red and gray hepatization, and on cutting the surface was bathed with a seropurulent exudate. The left lung was partly red hepatized. The heart and other vital organs were commensurate with his age. His age was 59 years. From these findings it was determined that the primary cause of death was acute right lobar pneumonia contributory to contusion of right side of chest."

In explanation of the rather technical description contained in the foregoing excerpt from the autopsy report, Dr. Webb testified further as follows: "Well, the side of the chest, as stated here, shows a faded out bruise. Now, a bruise after a period of time fades out. At first it is quite dark, a bluish color, or black almost; then it gradually fades out to a purple, and that purple color remains for quite some time. Eventually as the blood and pigment is absorbed that disappears. So the color there will indicate to a certain extent the age of the bruise. A faded out bruise would be a bruise that had been received at quite some previous time to the time of the examination. Now, a bruised part of the chest—if there were any broken ribs, I could not see them. The ribs may have been cracked by his injury, but healing of a rib takes place very rapidly and there was no evidence at the time of the autopsy of any broken ribs. Any injury to the chest wall creating an inflammatory condition of the pleura or lining of the wall is likely to bring about adhesions between the lung

and the wall. Ordinarily the lungs are free inside the chest, grating back and forth on the chest wall as they expand or contract; but adhesions will form if there is any inflammation, and you see it after a pleurisy, from pneumonia, you see it after injuries or broken ribs, there is an adhesion. In this case there was such an area of adhesion corresponding to the bruised area, and around this area and throughout that right lung was a pneumonic condition. The first stages of pneumonia are usually a solidification of the lungs—we call it hepatized, hepa referring to the liver; and the lung, instead of being soft and puffy, is of a liver-like consistency, hard and red because it is engulfed with blood and inflammation. As the pneumonic condition progresses the reaction, or the action of the bacteria or infection creates a grayish color which goes on to a stage where the disease is expressed by expectoration. Now, in this lung there showed evidences of the red and gray hepatization. In other words, there had been an established and continuous pneumonia in that right lung for some period of time. In the left lung, which is more of a sympathetic action, there had begun to show a red pneumonic condition. I think that explains the picture. . . . The pneumonia developing later was due to the lowered vitality of the lung tissue at the site of this adhesion which allowed the pneumonia to start from that region. I would consider the injury as tributary to his condition. The Court: In other words, you give the cause of death as pneumonia? A. Yes. The Court: The contributory cause as what? A. The contused right side of the chest.'' The doctor also testified: ''Well, what I found was on the right chest wall; I found no evidence of injury in the left chest wall, or any diseased condition resulting from an injury to the left chest wall. Q. By Mr. Schell: Injury to the left side of the chest would not in your opinion, as I understand you, have any significance so far as this particular condition was concerned you found in the right lung? A. It would not cause the condition which I found present in the right side. . . . Q. And in this case there was no evidence of injury to the lung tissue at all? A. No; the injury was to the chest wall, and involvement of the lung was secondary to that. . . . Q. Doctor, I understand you correctly, do I not, the only thickening and adherence of the pleura was opposite this bruised area? A. The adhesion was opposite the bruised area. Q. The only

place in either one of the two lungs that condition prevailed? A. Yes. Mr. Hayes: That is all.''

A physician, produced as a witness for the defendant, testified: ''My opinion is that the bruising of the chest wall, if it occurred along May 6th, would not be a contributing factor to the pneumonia of which this patient died in July. Q. Why? A. Because of the time element, and assuming in your question this man spit up no blood, had no cough, and was able to attend to his business, ran no fever, and a time element of approximately 35 days, as I remember your dates, before he became ill, in my opinion the bruising would not be a factor because, in a period of 35 days, healing of any bruising would be practically complete.'' In answer to a question propounded by the court, this doctor also testified: ''There is no causal connection from a fair medical certainty. There is a probability of a lowered resistance due to confinement, strapping of the chest, not getting around, influence of probably not eating as much as he should, and taking the amount of exercise he should. In other words, a lowering of his general resistance would be the only causal connection between the pneumonia he developed in July and the injury he received in May.''

Another medical witness produced by the defendants, testified: ''I believe the pneumonia has no relation to the apparent contusion to the chest wall.''

It is apparent from the verdict which the jurors rendered that they accepted the testimony of Dr. Webb to the effect that ''the pneumonia developing later was due to the lowered vitality of the lung tissue at the site of this adhesion which allowed the pneumonia to start from that region. I would consider the injury as tributary to his condition.'' Having read all the medical testimony reported in the transcript, we cannot say that the evidence, so far as it relates to the accident as the contributing cause of death, was insufficient to support the verdict.

Appellants, however, rely upon another element which they claim was so clearly proven as to make the evidence insufficient to sustain the verdict, namely, that the deceased was guilty of contributory negligence as a matter of law. This claim is based upon the incidents occurring at the time of the accident, particularly in regard to the manner in which both automobiles were driven at and immediately before the col-

lision. Here was another question of fact which the jurors were called upon to decide. They determined it adversely to the appellants and having all the evidence in mind upon which this decision was reached, we cannot say that the jury was in error upon that phase of the case.

■ It follows from the foregoing that we do not consider that the court erred in denying the defendants' motions for a directed verdict and for judgment notwithstanding the verdict. It remains to determine whether error arose when the court denied the motion for a mistrial made by defendants.

■ The incident upon which the motion was based occurred while Mrs. Preuitt was being cross-examined. "Q. How often did Dr. Gordon come to see Mr. Preuitt? A. Well, now, does that question mean before or after, or what? Q. Well, how many times altogether did he treat him? A. He just came that one night, and I wouldn't say it was treatment, because he put tape—taped Mr. Preuitt, and then told him that he had better get his own physician. And he taped him up, and just before he got through, after he got through taping him the insurance adjuster came, and that was just before Mr. Preuitt—he was in bed that night until the next day."

In support of their claim of error in this regard appellants cite a formidable array of cases in which references to insurance companies were held to be a proper cause of reversal. However, it does not follow that in every case where an insurance company is mentioned during a trial that such action is necessary or right. As appears from a perusal of the cases cited by appellant, the courts have not hesitated to set aside a verdict on the grounds stated in cases where a suspicion arose that the objectionable reference was made designedly or where it was inspired by a plan to let the jury know that one or more of the defendants were protected from loss by an insurance policy. In the instant case we are not convinced that the reference to insurance by the widow of deceased was made through design on her part and it is to be noted that the statement, while it had no connection whatever to the question propounded, was brought out under cross-examination and not through any suggestion or inquiry of her own counsel. Incidentally, we may say that the jurors, if they paid any particular attention to the remark made by Mrs. Preuitt that "the insurance adjuster came," may have thought that he was the representative of an insurance company under which

Mr. Preuitt himself was protected from accidental injury. In fact, we do not know at the present time whether "the insurance adjuster" in question had any connection whatever with the defendants. We feel that the matter was properly and sufficiently disposed of by the trial judge, when he stated: "The last answer of the witness, ladies and gentlemen, will be stricken; and, ladies and gentlemen of the jury, you are ordered to disregard and make no reference to it now or in the jury room, the last answer given by this witness; and, further, you are instructed that the only parties to this case are Lilly E. Preuitt, Barbara Bentley and Marion L. Dalrymple, and Virginia Marshall and E. Fayette Marshall. Those are the only parties to this case."

In taking this action the court followed the course that was adopted by the trial judge in the case of *Klingenstein* v. *Miehle P. P. etc. Co.*, 41 Cal. App. 352 [182 Pac. 768].

Judgment affirmed.

Doran, Acting P. J., and White, J., concurred.