[Nos. B083779, B071822. Second Dist., Div. Seven. June 30, 1995.]

KATHRYN CASTANEDA, a Minor, etc., Plaintiff and Appellant, v. LEONARD BORNSTEIN et al., Defendants and Respondents.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts II., IV. and V.

**COUNSEL**

Stuart B. Esner, Billie Ann U. Higa, Thomas Kallay, Carl A. McMahan and Robert Pourvali for Plaintiff and Appellant.

Mark B. Connely, Kenneth N. Mueller, Marshall Silberberg, Tobin J. Trobough, Scott F. Bradford, Sheila S. Kato and Kent L. Richland for Defendants and Respondents.

**OPINION**

**JOHNSON, J.**—Plaintiff Kathryn Castaneda brought this medical malpractice action against the physicians who provided her with care and treatment before, during, and immediately after her birth. She alleged defendants' negligence caused her to suffer brain damage which resulted in mental retardation. The trial court granted a nonsuit in favor of defendant Machikawa, the consulting "OB/GYN" and defendant Wang, a pediatrician who treated plaintiff immediately after her birth. The jury returned a verdict in favor of defendant Bornstein, a family medicine specialist who provided the primary care during plaintiff's gestation and performed an emergency cesarean delivery.

In the published portion of this opinion, we hold the trial court erred in excluding the testimony of plaintiff's expert as to causation on the ground plaintiff had not provided an adequate narrative statement of the proposed testimony in her expert witness declaration. Therefore, we reverse the judgment of nonsuit as to Dr. Machikawa.

As to Dr. Wang, we hold the trial court properly granted a nonsuit on the ground this defendant was immune from liability under the physicians "Good Samaritan" statutes. Therefore, we affirm the judgment in favor of Dr. Wang.

As to Dr. Bornstein, we hold the trial court did not err either in refusing to instruct the jury on res ipsa loquitur and informed consent or in giving an

instruction a doctor's error in judgment does not necessarily constitute negligence.[1] Therefore, we also affirm the judgment as to Dr. Bornstein.

## FACTS AND PROCEEDINGS BELOW

Dr. Bornstein examined plaintiff's mother, Diane Castaneda, in November 1986 and determined Ms. Castaneda was pregnant. Based on the date her last menstrual period began, Dr. Bornstein calculated her due date as July 16, 1987. An ultrasound performed in February 1987 suggested the due date would be four days earlier than Dr. Bornstein had calculated, but he continued to rely on the July 16th date.

Ms. Castaneda underwent regular checkups with Dr. Bornstein. As late as July 10, 1987, Dr. Bornstein believed this was an "uncomplicated pregnancy." He instructed Ms. Castaneda to return for a further examination on July 20th if she had not delivered by then.

By July 20, 1987, Ms. Castaneda was four to eight days overdue. Dr. Bornstein performed another examination and referred her to Beverly Hospital for a nipple stimulation test.[2] He instructed her to return to his office the following week. The nipple stimulation test was performed along with a nonstress test. The hospital reported to Dr. Bornstein the results of the nipple stimulation test were normal but the nonstress test indicated the baby was not moving at the time the test was given. Plaintiff produced expert testimony at trial the nonreactive result of the stress test indicated the baby was at high risk and compromised at that point. The defense presented evidence the test result could simply mean the baby was sleeping when the test was performed.

On or about July 27, 1987, Dr. Bornstein, who is not an obstetrician but a family medicine specialist, contacted Dr. Machikawa, who is an obstetrician, for advice on Ms. Castaneda's case in light of the fact she was now approximately two weeks past due. Dr. Machikawa told Bornstein the results of the nipple stimulation test were more important than the nonstress test and the former should govern decisions about the future care of Ms. Castaneda and her baby. It was decided between Bornstein and Machikawa that Ms. Castaneda should have another ultrasound test to determine the age of the fetus. At this time the baby showed normal fetal heart tones and no signs of fetal distress.

---

[1]Because the jury returned a verdict in favor of Dr. Bornstein, there is no need to reach the question whether plaintiff was prejudiced by the introduction of evidence of collateral sources of compensation under Civil Code section 3333.1.

[2]Beverly Hospital is a defendant in this action but not a party to this appeal. (See *Beverly Hospital* v. *Superior Court* (1993) 19 Cal.App.4th 1289 [24 Cal.Rptr.2d 238].)

An ultrasound was performed on July 29, 1987, at Beverly Hospital. Later that day, a radiologist called Dr. Bornstein and advised him the baby showed signs of mild ascites (fluid in the abdomen). Dr. Bornstein called Ms. Castaneda and told her to return to the hospital to have labor induced because of the ascites. However, before induction of labor commenced the baby's heart beat fell to a level indicating severe distress. This was reported to Dr. Bornstein who, in turn, informed Dr. Machikawa.

Dr. Bornstein immediately went to the hospital and commenced an emergency cesarean section on Ms. Castaneda. At the same time, he asked a nurse to call a pediatrician, specifically asking for Dr. Wang.

Plaintiff was born with her umbilical cord wrapped loosely around her neck and covered with meconium (her feces). At one minute of life her "APGAR" score was zero. She had no heart rate. Her muscle tone was limp and her skin color blue or pale. She had no spontaneous respiration or reflex response. Dr. Bornstein agreed at trial plaintiff showed signs of severe perinatal asphyxia at the time of her birth.

Dr. Wang arrived on the scene approximately 20 minutes after plaintiff's birth. He testified plaintiff suffered from severe perinatal asphyxia from a period before birth until about 10 minutes after birth. In his notes Dr. Wang wrote plaintiff had severe neonatal asphyxia with hypoglycemia and hypotension. Plaintiff's condition was stabilized at Beverly Hospital, after which she was transferred to the neonatal emergency care unit at another hospital.

The parties agree plaintiff suffers from severe mental retardation due to brain damage. Plaintiff's experts testified her injury was caused by asphyxia prior to birth in combination with hypotension and hypoglycemia shortly after birth. Evidence was introduced plaintiff was already suffering brain damage by the time she was transferred to the neonatal emergency care facility. Plaintiff's experts also testified the care and treatment rendered by Drs. Bornstein, Machikawa and Wang fell below the standard of care in the community in some respects.

Prior to trial, the court granted defendants' motions *in limine* to limit the testimony of plaintiff's experts to those opinions and conclusions they testified to in their depositions. (Although the court's order applied to all parties, it only affected the testimony of plaintiff's experts.) The court also ruled during trial that plaintiff's expert, Dr. Barnes, could not testify as to the legal cause of plaintiff's injury because he was not designated as a "causation expert." As a result of these rulings, plaintiff failed to present expert testimony the negligence of Dr. Machikawa was a legal cause of her injury.

Although plaintiff introduced evidence Dr. Bornstein's prenatal care of Ms. Castaneda was negligent in some respects[3], plaintiff produced no evidence this negligence was a cause of plaintiff's injury. For example, plaintiff's expert, Dr. Medearis, testified Dr. Bornstein should have repeated the nonstress test but he did not testify Dr. Bornstein's failure to do so affected the health of the baby. Nor did plaintiff produce any evidence mental retardation in newborns ordinarily does not occur in the absence of negligence.

At the close of plaintiff's evidence, the trial court granted motions for nonsuit by Drs. Machikawa and Wang on the grounds plaintiff had produced insufficient evidence of negligence,[4] insufficient evidence of causation, and plaintiff had improperly brought these defendants into the suit as Doe defendants under Code of Civil Procedure section 474.[5] The court granted a nonsuit as to Dr. Wang on the additional ground he was immune from liability under the physicians "Good Samaritan" statutes. (Bus. & Prof. Code, §§ 2395, 2396.)

The case was ultimately submitted to a jury on the issue of Dr. Bornstein's specific negligence, the court having refused plaintiff's requested res ipsa loquitur instructions. The jury returned a special verdict in favor of Dr. Bornstein. Judgments were entered for each of the defendants and plaintiff timely appealed.

## DISCUSSION

### I. Grounds for Nonsuit and Standard of Review.

A nonsuit may be granted after the plaintiff's presentation of evidence when no evidence of sufficient substantiality exists to support an element of the plaintiff's case (*Carson* v. *Facilities Development Co., supra*, 36 Cal.3d at pp. 838-839) or where the plaintiff's evidence establishes an affirmative defense which defeats the cause of action (*Breazeal* v. *Henry*

---

[3]This included treating Ms. Castaneda rather than referring her to an obstetrician; not watching her weight more closely; and not repeating the nonstress test when the result of the first test showed no movement on the part of the baby.

[4]Dr. Machikawa did not raise insufficiency of the evidence as to negligence as a ground for nonsuit in his written motion or in oral argument on the motion. Therefore, it was error for the trial court to grant the motion on this ground. (*Carson* v. *Facilities Development Co.* (1984) 36 Cal.3d 830, 839 [206 Cal.Rptr. 136, 686 P.2d 656].)

[5]We find no merit in the argument the complaint should be dismissed as to Drs. Machikawa and Wang because plaintiff (through her mother and guardian) knew the identity of these defendants at the time she sued them as "Does." At the time plaintiff amended her complaint to sue defendants under their true names the statute of limitations had not run and plaintiff could have filed a separate suit. Defendants have shown no prejudice.

*Mayo Newhall Memorial Hospital* (1991) 234 Cal.App.3d 1329, 1337 [286 Cal.Rptr. 207]). In ruling on a motion for nonsuit, the trial court must accept all evidence favorable to the plaintiff as true and must disregard all conflicting evidence. (*Carson* v. *Facilities Development Co., supra,* 36 Cal.3d at pp. 838-839.) Where, as here, the plaintiff introduces the testimony of an adverse witness, portions of the witness's testimony favorable to the plaintiff must be taken as true and unfavorable portions disregarded. (*Morgenroth* v. *Pacific Medical Center, Inc.* (1976) 54 Cal.App.3d 521, 530 [126 Cal.Rptr. 681].)

On appeal from a judgment of nonsuit, the reviewing court is guided by the same principles. The judgment will be sustained if, " 'interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law.' " (*Carson* v. *Facilities Development Co., supra,* 36 Cal.3d at p. 839, quoting from *Mason* v. *Peaslee* (1959) 173 Cal.App.2d 587, 588 [343 P.2d 805].) Where there is no evidence to review because the trial court excluded it, we review the trial court's evidentiary rulings to determine if the evidence was properly excluded. If relevant and material evidence was excluded which would have allowed the plaintiff to overcome a nonsuit, the judgment must be reversed. (*Lawless* v. *Calaway* (1944) 24 Cal.2d 81, 89 [147 P.2d 604].)

II. *The Uncontradicted Evidence Established Dr. Wang Was Immune From Liability Under the Physicians "Good Samaritan" Statutes.*\*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

III. *The Trial Court Erred in Excluding Dr. Barnes's Expert Testimony Concerning the Cause of Plaintiff's Injury on the Ground Barnes's Testimony Was Not Adequately Disclosed in Plaintiff's Expert Witness Declaration.*

Under Code of Civil Procedure section 2034[6] a party may demand from all other parties a disclosure of information concerning expert witnesses the parties intend to call at trial. A party intending to call an expert must respond with an "expert witness declaration" which "shall contain: [¶] (A) A brief narrative statement of the qualifications of each expert. [¶] (B) A brief narrative statement of the general substance of the testimony that the expert is expected to give." (§ 2034, subd. (f)(2). The penalty for "unreasonably" failing to submit such a declaration as to a retained expert is exclusion of the expert's testimony at trial. (§ 2034, subd. (j).)

---

\*See footnote, *ante,* page 1818.

[6]All statutory references are to the Code of Civil Procedure unless otherwise stated.

Dr. David Barnes, a specialist in obstetrics and gynecology, was duly designated as an expert witness for plaintiff in her expert witness declaration. At trial, Dr. Barnes testified that in his opinion Dr. Machikawa's care and treatment of plaintiff's mother fell below the applicable standard of care. Plaintiff's counsel then switched to the topic of whether Dr. Machikawa's negligence was a legal cause of plaintiff's injury. The following colloquy took place:

"Q. [by plaintiff's counsel] Now, I want you to assume that this baby has been delivered at 38 or 39 weeks by way of a Caesarean section, as we've been discussing. In your opinion, would this baby have had a better outcome?

"A. No question.

"Mr. Rushfeldt [attorney for Beverly Hospital]: Your Honor, I'm going to object. It goes to causation, and [Dr. Barnes] wasn't provided as a causation expert.

"Mr. Mueller [counsel for defendant Bornstein]: I'm going to join in that objection and move to strike the answer, if there was one. . . .

"The Court: . . . I'm going to sustain the objection and strike the answer, admonish the jury to disregard it."

As we explain below, the trial court erred in excluding Dr. Barnes's testimony because plaintiff's description of the general substance of Dr. Barnes's testimony was sufficient to put defendants on notice the witness would testify as to causation. Furthermore, even if plaintiff's declaration was defective in this respect, such a defect did not authorize the trial court to exclude Dr. Barnes's testimony as to causation. Before reaching the merits, however, we address Dr. Machikawa's contention plaintiff waived any claim of error as to the court's ruling.

A. *Preservation of Issue on Appeal.*

Dr. Machikawa contends we should not reach the question whether the trial court erred in excluding Dr. Barnes's testimony. He argues plaintiff failed to preserve that issue on appeal by not making an offer of proof as to the questions she would have asked Dr. Barnes and what his answers would have been, beyond the one question and answer stricken by the trial court. Without this information, defendant reasons, we cannot determine whether exclusion of the testimony, even if erroneous, was prejudicial. (Cal. Const. art. VI, § 13; Evid. Code, § 354.)

It is true, as a general rule, ". . . any claim that evidence was wrongly excluded cannot be raised on appeal absent an offer of proof in the trial court." (*People* v. *Pride* (1992) 3 Cal.4th 195, 235 [10 Cal.Rptr.2d 636, 833 P.2d 643].) There are exceptions to this rule, however. "Where . . . an entire class of evidence has been declared inadmissible or the trial court has clearly intimated that it will receive no evidence of a particular type or class, or upon a particular issue, an offer of proof is not a prerequisite to arguing on appeal the prejudicial nature of the exclusion of such evidence." (*Lawless* v. *Calaway, supra,* 24 Cal.2d at p. 91.)

In *Lawless,* a medical malpractice action, the plaintiff attempted to establish defendant's conduct was below the standard of care ordinarily exercised by doctors in the community by calling defendant as an adverse witness. The trial court sustained objections to this line of questioning on the ground an adverse party called as a witness cannot be examined as an expert. Plaintiff made no offer of proof as to the testimony defendant would give if she was allowed to examine him. As a consequence of the trial court's evidentiary ruling, plaintiff was unable to offer evidence as to defendant's breach of the standard of care, and the trial court granted defendant's motion for nonsuit. The Supreme Court reversed, holding the trial court improperly excluded defendant's testimony. (24 Cal.2d at pp. 90-91.) The court further held an offer of proof was unnecessary to establish prejudice in this case. "The questions to which objections were sustained were appropriate preliminaries to a more complete examination of the witness, and prejudice ensued from the cutting off *in limine* of all inquiry on a subject with respect to which the plaintiff was entitled to examine defendant." (*Id.* at p. 92, italics in original.)

In the present case, the trial court declared an entire class of evidence inadmissible: expert opinion on causation by a witness not designated as a "causation" expert. There can be no doubt such testimony was relevant and material and its exclusion prejudicial because the exclusion resulted in a nonsuit as to Dr. Machikawa. (*Lawless* v. *Calaway, supra,* 24 Cal.2d at p. 89; *Martinez* v. *City of Poway* (1993) 12 Cal.App.4th 425, 433 [15 Cal.Rptr.2d 644].)

B. *The Trial Court Erred in Excluding the Causation Testimony of Dr. Barnes on the Ground Defendant Were Not Notified of Such Testimony in Plaintiff's Expert Witness Declaration.*

Section 2034, subdivision (f)(2)(B) requires a party's expert witness declaration to contain "[a] brief narrative statement of the general substance of the testimony that the expert is expected to give." Plaintiff's

declaration stated, "Dr. Barnes will testify as to the negligent obstetric care and treatment of Diane Castaneda *leading to* the asphyxia injury to plaintiff minor . . . ." (Italics added.) We believe this statement of the "general substance" of Dr. Barnes's testimony was broad enough to include the issue of causation as well as the issue of breach of the standard of care. Although in strict legal terms, proof an act "led to" an injury would not be the equivalent of proof an act was the "legal cause" of an injury, we do not believe the Legislature intended a "brief narrative statement" containing the "general substance" of an expert's testimony should be written in strict legal terms. This would only result in delays during trial while the parties argued over the technical legal sufficiency of the expert witness declaration prior to the admission of each expert's testimony. Rather, these "brief narrative statements" were intended to give the opposing party fair notice of the subject areas the expert would address in trial testimony in order for the opposing party to prepare cross-examination and rebuttal. (*Kennemur* v. *State of California* (1982) 133 Cal.App.3d 907, 916, 919 [184 Cal.Rptr. 393] [construing identical language in former § 2037.3].)

Read in this context, we conclude the statement Dr. Barnes would testify as to negligence "leading to" plaintiff's injury was sufficient to put the defendants on notice Barnes would testify as to both breach of duty and causation. It is undisputed Dr. Machikawa had the opportunity to depose Barnes on both these issues. If he chose not to do so based on a narrow, technical interpretation of the narrative statement, we find he has no justification to complain.

■ Furthermore, even if plaintiff's expert witness declaration failed to disclose Dr. Barnes would testify on the issue of causation, the trial court erred in excluding Barnes's causation testimony on that ground. As explained in *Martinez* v. *City of Poway, supra,* 12 Cal.App.4th at page 429, section 2034, subdivision (j) does not permit the exclusion of an expert's testimony on a subject on the ground the narrative statement of the witness's testimony did not embrace that subject.

In *Martinez,* the plaintiff was injured in a collision at an intersection in the city of Poway. He sued the driver of the car with whom he collided and the city. Plaintiff's expert witness declaration stated his expert would testify on the subject of traffic engineering and the safety of the intersection where the

accident occurred. At trial, the plaintiff sought to use the same witness as an accident reconstruction expert to testify how the accident occurred. The city objected on the ground the latter testimony was not disclosed in the statement of the general substance of the witness's testimony.[7] The trial court sustained this objection and granted a nonsuit to the city for lack of evidence the dangerous condition of the city street was a legal cause of the accident. (12 Cal.App.4th at p. 433.) The Court of Appeal reversed, holding section 2034, subdivision (j) permits exclusion of the expert's testimony if the party offering the testimony failed to submit an expert witness declaration but not if the party submitted a declaration which was inaccurate or incomplete. (12 Cal.App.4th at pp. 428-429.)

Although the conclusion reached in *Martinez* may appear to be at odds with the spirit of section 2034, subdivision (j), it is compelled by the language of the statute and its legislative history.[8] Section 2034, subdivision (j) provides ". . . the trial court shall exclude from evidence the expert opinion of any witness that is offered by any party who has unreasonably failed to do any of the following: . . . [¶] (2) Submit an expert witness declaration." In contrast, former section 2037.5 provided "no party . . . may call an expert witness to testify . . . unless the requirements of Section 2037.3 for that witness have been met." Former section 2037.3 required a party intending to call an expert witness to furnish the opposing party with a statement setting forth "the general substance of the testimony which the witness is expected to give." Thus, under the former law, it was a ground for excluding expert testimony that the proponent's expert witness declaration failed to disclose the "general substance" of the expected testimony. Under section 2034 subdivision (j), however, it is only a ground for exclusion if the proponent fails to *submit* an expert witness declaration. There is no doubt this change in the law was intentional. When the Legislature enacted a major overhaul of the California discovery law in 1986, it initially retained the rule excluding expert testimony for failure to disclose the "general substance" of the testimony. (Stats. 1986, ch. 1336, § 2, p. 4756.) However, before this provision took effect, the Legislature amended it to provide the exclusion sanction is only available if the proponent fails to "[s]ubmit an expert witness declaration." (Stats. 1987, ch. 86, § 17, p. 351.) (See discussion in *Martinez* v. *City of Poway, supra,* 12 Cal.App.4th at pp. 429-430; 1 Hogan, Modern Cal. Discovery (4th ed. 1988) p. 645.)

---

[7]The trial court had previously denied plaintiff's motion to augment his expert witness declaration to include the witness's proposed accident reconstruction testimony. (12 Cal.App.4th at p. 431.)

[8]As we discuss *post,* other remedies are available to the opposing party short of excluding the expert's testimony.

There are, of course, remedies short of evidence exclusion available to the opposing party when the proponent of the expert testimony fails to comply with the requirement to disclose the general substance of that testimony. These remedies include but are not limited to the following. The proponent could be required to submit a detailed declaration as to the expert's expected testimony, including a description of the information concerning the subject matter of the action the expert relied on in formulating his or her opinions, the subjects on which the expert is expected to testify, the substance of the facts and opinions to which the expert is expected to testify and a summary of the grounds for each such opinion. (See State Bar/Judicial Council of Cal. Joint Com. on Discovery, Proposed Cal. Civil Discovery Act of 1986, § 2034 (g)(2), quoted in 3 Hogan, Modern Cal. Discovery, *supra*, at pp. 258-259.) The proponent could be required to make the expert available for deposition at the time and place most convenient to the opposing party and to pay all costs and litigation expenses incurred in the deposition. (*Kennemur* v. *State of California*, *supra*, 133 Cal.App.3d at p. 920.) The trial court could allow the opposing party to designate additional experts or elicit additional opinions from those previously designated in order to rebut the testimony of the proponent's expert. (Cf. § 2034, subd. (k).) To the extent these remedies result in a delay in the trial, the court could instruct the jury the delay was caused by the proponent's failure to comply with the discovery rules. The trial court may fashion other remedies appropriate to the circumstances.

■ There is no dispute Dr. Barnes was qualified to offer an opinion on the cause of plaintiff's injury. His identity was timely disclosed to defendants along with a description of his expected testimony, even if somewhat ambiguous as to its scope. Because the trial court granted a nonsuit in favor of Dr. Machikawa due to lack of evidence of causation, it is reasonably probable that absent the erroneous exclusion of Dr. Barnes's testimony plaintiff would have obtained a more favorable result. The trial court's ruling, therefore, was prejudicial and requires a reversal of the judgment as to Dr. Machikawa. (*Lawless* v. *Calaway*, *supra*, 24 Cal.2d at p. 89: *Martinez* v. *City of Poway*, *supra*, 12 Cal.App.4th at p. 433.)

IV., V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . .

*See footnote, *ante*, page 1818.

### DISPOSITION

The judgments as to defendants Bornstein and Wang are affirmed and defendants are awarded costs on appeal. The judgment as to defendant Machikawa is reversed and plaintiff is awarded costs on appeal.

Lillie, P. J., and Woods (Fred), J., concurred.

The petitions of both appellant and respondents for review by the Supreme Court were denied September 21, 1995.