[No. B178286. Second Dist., Div. Two. Nov. 7, 2006.]

THE STONEGATE HOMEOWNERS ASSOCIATION, Plaintiff and Appellant, v.
T. A. STABEN, Defendant and Respondent;
R&R PALACIOS CONSTRUCTION, INC., Movant and Appellant.

[No. B182069. Second Dist., Div. Two. Nov. 7, 2006.]

R&R PALACIOS CONSTRUCTION, INC., Cross-complainant and Appellant, v.
T. A. STABEN, Cross-defendant and Respondent.

COUNSEL

Robertson & Vick, Jonathan S. Vick and Robert Nation for Plaintiff and Appellant.

Horvitz & Levy, Curt Cutting, Daniel J. Gonzalez; Bremer Whyte Brown & O'Meara, Matthew J. Eschenburg, Keith G. Bremer and Raymond Meyer, Jr., for Movant and Appellant and for Cross-complainant and Appellant.

Sabaitis • O'Callaghan, Frank T. Sabaitis and Louis R. Chao for Defendant and Respondent and for Cross-defendant and Respondent.

OPINION

**DOI TODD, J.**—In this construction defect case, the general contractor hired a subcontractor to waterproof retaining walls and install backdrains in a large residential development. After discovering seepage and drainage problems, the homeowners association sued the general contractor and the subcontractor for negligence. During a jury trial, the subcontractor's motion for nonsuit was granted and judgment was entered in its favor. On appeal, the homeowners association and the general contractor contend that the trial court erroneously precluded expert testimony on the subcontractor's standard of care and erred in granting nonsuit. We agree and reverse the judgment in favor of the subcontractor. We also reverse the summary judgment granted in favor of the subcontractor on the general contractor's cross-complaint for indemnity because we find there are triable issues of material fact as to whether the subcontractor was negligent. In light of our rulings, the costs awarded to the subcontractor must also be set aside.

## FACTUAL AND PROCEDURAL BACKGROUND

This action arises out of the construction of a 238-home residential development in the West Hills section of Los Angeles (the Stonegate project). The developer entered into a written contract with appellant R&R Palacios Construction, Inc. (Palacios), for construction of retaining walls. Palacios, by oral agreement, subcontracted the waterproofing and drainage work on the retaining walls to respondent T. A. Staben (Staben), a company with which Palacios had previously worked.

At trial, Ron Palacios testified that he told Tom Staben to "waterproof [the walls] with Thoroseal," install four-inch subsurface drain lines, backfill the walls with sand and lay "v-ditches." Mr. Palacios testified that he did not know how to apply Thoroseal and that he told Mr. Staben to apply it according to the manufacturer's specifications. He later testified that he never had a conversation with Mr. Staben about how the Thoroseal should be applied. He also testified that he did not tell Mr. Staben how to install the drains. Mr. Palacios further testified: "I don't tell [Mr. Staben] how to do his job," explaining that Mr. Staben was a "professional."

Mr. Staben testified that he was not given any specifications as to how to apply the Thoroseal to the walls at the Stonegate project and that he was only told to apply it "the same way" he had at the "Moorpark project," which involved the same developer. But Mr. Palacios testified he had not worked on the Moorpark project and that he was unaware of how Staben did the work on the Moorpark project.

In late 1989, Staben completed the waterproofing and drainage installation on the walls Palacios built at the Stonegate project. Palacios paid Staben for its work and did not have any problems with the work. After the work was completed, homeowners in the development began to notice wet soil or boggy conditions in their yards together with dampness on the downhill side of the retaining walls and a white powdery substance on the walls called "efflorescence." In 1999, appellant The Stonegate Homeowners Association (Stonegate) filed suit against the developer and others for negligence, strict liability and implied warranty, alleging that the retaining walls had been defectively waterproofed and drained. Stonegate later substituted Palacios and Staben in place of fictitiously named defendants. The trial court dismissed the strict liability and warranty claims, leaving only the negligence cause of action to be tried. Palacios cross-complained against Staben for indemnity, contribution and declaratory relief.

Stonegate eventually settled or disposed of its claims against all defendants except Staben. Palacios entered into a sliding scale or *Mary Carter* settlement agreement (*Booth v. Mary Carter Paint Co.* (Fla.Dist.Ct.App. 1967) 202 So.2d 8) with Stonegate, whereby Palacios guaranteed a global payment of $3.3 million that would be reduced by the amount recovered by Stonegate from nonsettling parties through settlement or judgment. Prior to trial, Stonegate dismissed Palacios as a defendant, and the court severed Palacios's indemnity cross-complaint. Trial proceeded only against Staben on Stonegate's claim for negligence.

During trial, Stonegate attempted to present expert witness testimony on the standard of care in applying Thoroseal and in installing a subsurface backdrain and that Staben's work fell below those standards. The trial court precluded the testimony, ruling that the relevant issue was not the standard of care, but the oral contract between Palacios and Staben and what Staben was told to do under that agreement. The court deemed Palacios to be the "gatekeeper" and stated that Palacios should be responsible for any defects.

At the close of Stonegate's evidence, Staben orally moved for nonsuit on the grounds that "there is no conflict in the evidence that Mr. Staben's duty was to do what Mr. Palacios asked him to do pursuant to what he had done for the same . . . developer in the project called Moorpark" and that Staben did not owe a duty to Stonegate. The trial court granted the motion for nonsuit, stating: "The court's basis for the nonsuit is that there was a lack of any testimony by the plaintiff as to the specific duties the defendant had regarding his oral contract with Palacios." The court further stated: "The bottom line of the situation is that the plaintiff just did not present any evidence of facts with regard to the contract between Palacios and Staben to raise any duty or obligation for Staben to perform other than he did." The court then entered judgment in favor of Staben. Both Stonegate and Palacios filed motions for a new trial, which the court denied. Stonegate and Palacios have separately appealed from the judgment in favor of Staben. Stonegate also appeals from the trial court's award of costs to Staben.

Following entry of judgment in its favor, Staben moved for summary judgment on Palacios's severed cross-complaint for indemnity, arguing that because Staben fulfilled its obligations under the oral agreement with Palacios, the requisite predicate tort to maintain an action for equitable indemnity was absent. The trial court agreed, granting the motion and entering summary judgment in favor of Staben. The court then awarded costs to Staben in the amount of $78,937.52—the same amount the court had awarded against Stonegate. Palacios appeals from both the summary judgment on its cross-complaint and the award of costs. Stonegate's and Palacios's appeals have been consolidated.

## DISCUSSION

### I. *THE NONSUIT MOTION*

Stonegate and Palacios contend the trial court erred in granting the nonsuit because expert testimony on Staben's standard of care should have been admitted.[1]

### A. *Standard of Review*

"A motion for nonsuit allows a defendant to test the sufficiency of the plaintiff's evidence before presenting his or her case. Because a successful nonsuit motion precludes submission of plaintiff's case to the jury, courts grant motions for nonsuit only under very limited circumstances." (*Carson v. Facilities Development Co.* (1984) 36 Cal.3d 830, 838 [206 Cal.Rptr. 136, 686 P.2d 656].) "A defendant is entitled to a nonsuit if the trial court determines that, as a matter of law, the evidence presented by plaintiff is insufficient to permit a jury to find in his favor. [Citation.] 'In determining whether plaintiff's evidence is sufficient, the court may not weigh the evidence or consider the credibility of witnesses. Instead, the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded. The court must give "to the plaintiff['s] evidence all the value to which it is legally entitled, . . . indulging every legitimate inference which may be drawn from the evidence in plaintiff['s] favor." ' [Citation.] A mere

---

[1] Staben argues that Palacios lacks standing to challenge the nonsuit. We disagree. " 'Any party aggrieved' may appeal from an adverse judgment. (Code Civ. Proc., § 902.) The test is twofold—one must be both a party of record to the action *and* aggrieved to have standing to appeal. The first requirement, that one be a party of record, is subject to an exception under which a nonparty who moves to vacate the judgment is permitted to appeal as if he were a party. We think the exception should equally encompass a nonparty who moves for judgment notwithstanding the verdict and a new trial . . . ." (*Shaw v. Hughes Aircraft Co.* (2000) 83 Cal.App.4th 1336, 1342 [100 Cal.Rptr.2d 446] [Nonparent corporation had standing to appeal where it filed motions for judgment notwithstanding verdict and for new trial and was aggrieved by adverse judgment against its subsidiary because it had assumed obligation to pay judgment]; *Lippman v. City of Los Angeles* (1991) 234 Cal.App.3d 1630, 1634 [286 Cal.Rptr. 406] ["[W]e see no reason why, if an aggrieved person can become a party to the record by moving to vacate the judgment, he or she cannot accomplish the same result by moving for a new trial"].)

Here, Palacios filed a motion for new trial, which was denied. Palacios therefore became a party of record. Palacios was also aggrieved by the judgment in favor of Staben because pursuant to Palacios's sliding scale *Mary Carter* settlement agreement with Stonegate, any recovery by Stonegate against Staben would reduce the amount of Palacios's liability to Stonegate "dollar for dollar." The judgment in favor of Staben precluded Palacios from reducing its liability to Stonegate. But even if we were mistaken in finding that Palacios had standing to challenge the nonsuit on appeal, Stonegate has joined in Palacios's brief on this issue, adopting it by reference. (Cal. Rules of Court, rule 13(a)(5).) Thus, we would be able to address Palacios's challenge to the nonsuit in any event.

'scintilla of evidence' does not create a conflict for the jury's resolution; 'there must be *substantial evidence* to create the necessary conflict.' [Citation.]" (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291 [253 Cal.Rptr. 97, 763 P.2d 948].)

In reviewing a grant of nonsuit, we are "guided by the same rule requiring evaluation of the evidence in the light most favorable to the plaintiff." (*Carson v. Facilities Development Co., supra,* 36 Cal.3d at p. 839; see *Pinero v. Specialty Restaurants Corp.* (2005) 130 Cal.App.4th 635, 639 [30 Cal.Rptr.3d 348].) "We will not sustain the judgment ' "unless interpreting the evidence most favorably to plaintiff's case and most strongly against the defendant and resolving all presumptions, inferences and doubts in favor of the plaintiff a judgment for the defendant is required as a matter of law." ' [Citation.]" (*Nally v. Grace Community Church, supra,* 47 Cal.3d at p. 291.) "Although a judgment of nonsuit must not be reversed if plaintiff's proof raises nothing more than speculation, suspicion, or conjecture, reversal is warranted if there is 'some substance to plaintiff's evidence upon which reasonable minds could differ . . . .' " (*Carson v. Facilities Development Co., supra,* at p. 839.) As below, we do not weigh the evidence or consider the credibility of witnesses. (*Alpert v. Villa Romano Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1327 [96 Cal.Rptr.2d 364].) "Where there is no evidence to review because the trial court excluded it, we review the trial court's evidentiary rulings to determine if the evidence was properly excluded. If relevant and material evidence was excluded which would have allowed the plaintiff to overcome a nonsuit, the judgment must be reversed. [Citation.]" (*Castaneda v. Bornstein* (1995) 36 Cal.App.4th 1818, 1825 [43 Cal.Rptr.2d 10], disapproved on another point in *Bonds v. Roy* (1999) 20 Cal.4th 140, 149, fn. 4 [83 Cal.Rptr.2d 289, 973 P.2d 66].)

### B. *The Trial Court Erred in Precluding Expert Testimony on Staben's Duty of Care*

#### 1. *Trial Court Proceedings*

It was Stonegate's position at trial that Staben was responsible for two major defects in construction of the retaining walls: inadequate waterproofing and improper placement of backdrains.

##### a. *Inadequate Waterproofing*

Stonegate argued that inadequate waterproofing with Thoroseal permitted hillside drainage to seep into and through the concrete blocks of the walls and caused the formation of sulfate efflorescence that threatened the structural integrity of the walls. Tom Staben acknowledged that the goal in applying

Thoroseal was "total coverage," and that "the more thorough the coverage, the better water deterring effect it would have." Stonegate's waterproofing expert, Warren Kelly Roberts, testified that when properly applied, Thoroseal "develops a hard shell that's impervious to water." Roberts testified that during his excavation and physical inspection of the retaining walls at several places, he observed areas where the Thoroseal application was too thin and other areas where no Thoroseal had been applied. Of the 11 sites he observed, Roberts found the coverage faulty or inadequate in "all but one," and the coverage was not effective in preventing water from passing through the Thoroseal barrier.

Roberts tried to explain the standard of care in applying Thoroseal to the walls, and that Staben's work fell below that standard. But the trial court ruled that standard of care in the industry was not relevant, based on its conclusion that the terms of the oral contract between Palacios and Staben established Staben's responsibilities. The court sustained objections to Roberts's testimony that would have explained how a contractor would ordinarily go about preparing and applying Thoroseal.

The day following Roberts's testimony, Stonegate filed a motion for reconsideration, which included an offer of proof that Roberts would testify that Staben failed to meet the manufacturer's specifications for applying Thoroseal that appeared on every bag of Thoroseal when Staben did his work. Among these specifications was the requirement for application of two coats to ensure complete coverage. The court denied the motion, stating that it had no recollection that Ron Palacios had told Tom Staben to apply the Thoroseal according to the manufacturer's instructions.

b.  *Improper Placement of Drains*

Stonegate sought to establish that Staben installed the subsurface backdrains too high above the foundation, which rendered the drains largely useless because water would accumulate behind the walls and flow through "weep" holes or "open head" joints before rising to the level of the backdrains. This created wet or boggy soil conditions in the owners' yards. Mr. Staben admitted that it was his "personal feeling" that the drains should have been placed right on top of the footing. He testified that he believed a city building inspector told him to install the drains at an angle, which he did, though he thought such placement was "incorrect." Stonegate's drainage expert, Mohammad Joolezadah, testified that during his inspection of the site he observed drains placed at various heights above the footing, with one drain as high as 22 inches above the footing.

Joolezadah was prepared to testify that the standard of care was to place the drains horizontally along the footing with a two-inch bed of gravel below

and that Staben's placement of the subsurface backdrains was too high and fell below the standard of care. But the trial court precluded this testimony, refusing to allow Stonegate's experts to "go beyond" the oral contract to establish any standard of care on Staben's part.

### 2. *Subcontractor's Standard of Care*

■ Appellants contend that the court erred in narrowing its focus on the words of the oral agreement to the exclusion of evidence on the standard of care. We agree. "The subcontractor has a duty to perform work in a good and workmanlike manner. A subcontractor who is careless and negligent in the performance of the work is liable to the general contractor, to the owner, and to third persons for any damages proximately caused. [¶] When the work is performed in a defective manner, the measure of liability is the same as the damages that the owner can recover from the contractor. . . . [¶] . . . The owner ordinarily has a cause of action against the subcontractor arising from the subcontractor's defective work, even though there is no privity of contract between the owner and the subcontractor. The owner usually has a cause of action in negligence as a party within the area of foreseeable risk." (11 Miller & Starr, Cal. Real Estate (3d ed. 2001) § 29:18, pp. 29-115 to 29-116, fns. omitted; see also *La Jolla Village Homeowners' Assn. v. Superior Court* (1989) 212 Cal.App.3d 1131, 1145 [261 Cal.Rptr. 146], disapproved on another point in *Jimenez v. Superior Court* (2002) 29 Cal.4th 473, 484 [127 Cal.Rptr.2d 614, 58 P.3d 450] ["imposition of liability is still available against the subcontractor based upon the conventional theories of breach of contract, warranty or negligence"]; 1 Cal. Construction Contracts and Disputes (Cont.Ed.Bar 2d ed. 2005) § 6.8, p. 591 ["subcontractors . . . are held to a standard of due care . . . for their performance"].)

In *Stewart v. Cox* (1961) 55 Cal.2d 857 [13 Cal.Rptr. 521, 362 P.2d 345], homeowners pursued a negligence action against a subcontractor hired to install concrete in their swimming pool. The court stated that the "question is whether a subcontractor such as Cox may be liable to the owner, with whom he was not in privity of contract, for damage occurring after his work had been accepted by the contractor and the owner." (*Id.* at pp. 861–862.) The court concluded that the subcontractor "should not be exempted from liability if negligence on his part was the proximate cause of the damage to plaintiffs." (*Id.* at p. 863.) " ' "Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort as well as a breach of the contract." ' " (*Kuitems v. Covell* (1951) 104 Cal.App.2d 482, 485 [231 P.2d 552] [finding that contract to install roofing

material contained an implied warranty that such material would be fit for its intended use].)

■   Standard of care and its breach in the construction defect context must usually be established through expert testimony, though lay testimony may suffice where construction defects "are of such common knowledge that men of ordinary education could easily recognize them." (*Raven's Cove Townhomes, Inc. v. Knuppe Development Co.* (1981) 114 Cal.App.3d 783, 797 [171 Cal.Rptr. 334]; see *Miller v. Los Angeles County Flood Control Dist.* (1973) 8 Cal.3d 689, 702–703 [106 Cal.Rptr. 1, 505 P.2d 193].)

We conclude that the trial court erred in precluding Stonegate from presenting expert testimony on Staben's standard of care. Staben agreed to perform the waterproofing and drainage work on the retaining walls built by Palacios and had the duty to perform those tasks in a good and workmanlike manner. As such, the testimony of Stonegate's experts was relevant to the issue of whether Staben met the standard of care expected within the industry. The trial court's focus on the terms of the oral agreement to the exclusion of the standard of care evidence puts contractors like Palacios in an untenable position. The evidence showed that Palacios did not know how to do portions of the work subcontracted to Staben and therefore did not tell Staben how to perform its work. But under the trial court's theory, Staben would only be liable for defects in its work if Palacios had given it detailed instructions on how to do the work. In other words, according to the court, the more the contractor must rely on the subcontractor, the less the subcontractor will be held accountable. This is not sound public policy and is not the law in California. Indeed, that Palacios did not tell Staben how to waterproof the walls or how to install the backdrains underscores why Staben was under a duty to adhere to the standard of care in the industry. Without adherence to the standard of care, Staben could not have achieved the desired objective of its work.

Because evidence that Staben's work fell below the standard of care in the construction industry could have enabled Stonegate to overcome the nonsuit on its negligence claim, the judgment in favor of Staben must be reversed. (*Castaneda v. Bornstein, supra*, 36 Cal.App.4th at p. 1825.)

II.  *SUMMARY JUDGMENT MOTION*

Palacios also challenges the trial court's grant of summary judgment in favor of Staben on Palacios's cross-complaint for indemnity.

A.  *Standard of Review*

"The motion for summary judgment shall be granted if all the papers submitted show that there is no triable issue as to any material fact and that

the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) "To secure summary judgment, a moving defendant may prove an affirmative defense, disprove at least one essential element of the plaintiff's cause of action [citations] or show that an element of the cause of action cannot be established [citation]." (*Sanchez v. Swinerton & Walberg Co.* (1996) 47 Cal.App.4th 1461, 1465 [55 Cal.Rptr.2d 415]; see Code Civ. Proc., § 437c, subd. (p)(2).) Once the defendant or cross-defendant has made this showing, "the burden shifts to the plaintiff or cross-complainant to show that a triable issue of one or more material facts exists as to that cause of action . . . ." (Code Civ. Proc., § 437c, subd. (p)(2).)

We independently review the trial court's decision to grant summary judgment, using the same three-step analysis as the trial court: (1) Identifying the issues framed by the pleadings; (2) determining whether the defendant negated the plaintiff's claims; and (3) deciding whether the plaintiff demonstrated the existence of a triable, material factual issue. (*Silva v. Lucky Stores, Inc.* (1998) 65 Cal.App.4th 256, 261 [76 Cal.Rptr.2d 382].)

B. *The Cross-complaint and Motion for Summary Judgment*

Palacios filed a cross-complaint against Staben asserting causes of action for indemnity, contribution and declaratory relief. Palacios alleged that if it were found liable to Stonegate or settled with Stonegate, it was entitled to indemnity or contribution from Staben by reason of Staben's "negligence or other fault" in its work on the Stonegate project.

Following entry of judgment in favor of Staben on its nonsuit, Staben moved for summary judgment on Palacios's cross-complaint. Staben asserted that its motion was "based on the fact that the evidence in the case has established that in performing its work at the Stonegate project, Staben fulfilled all of its obligations under its oral agreement with R&R Palacios, and therefore the predicate tort necessary for Palacios to maintain these causes of action is absent." Specifically, Staben relied on the deposition testimony of Tom Staben that Ron Palacios told him the developer "wanted to use Thoroseal like they had used in Moorpark," "to [his] knowledge" Thoroseal was used on each of the retaining walls built by Palacios and that Palacios had paid Staben for the work, as well as Ron Palacios's testimony that he had no problems with Staben's work at the Southgate project.

Palacios opposed the motion by presenting evidence that Staben did not apply the Thoroseal in compliance with the standard of care in the industry. Specifically, Palacios relied on the deposition testimony of its waterproofing

expert, Warren Kelly Roberts, that Thoroseal was to be applied in a two-coat uniform manner; Staben did not apply the Thoroseal in a two-coat uniform manner; there were areas where the Thoroseal application was too thin or was missing altogether; and Staben either oversaturated the Thoroseal when preparing it or oversaturated the walls before application. Palacios also relied on the deposition testimony of its drainage expert, Mohammad Joolezadah, that improper waterproofing and the absence of waterproofing led to wall deterioration.

The trial court granted the motion for summary judgment, stating: "For equitable indemnity against the indemnitor there must be a basis for tort liability against the proposed indemnitor. [Staben] having performed under the oral contract to the satisfaction of [Palacios], there is no tort liability."

> C. *There Were Triable Issues of Material Fact as to Whether Staben Was Negligent*

■ "[T]he doctrine of comparative equitable indemnity is designed to do equity among defendants. Under the equitable indemnity doctrine, defendants are entitled to seek apportionment of loss between the wrongdoers in proportion to their relative culpability so there will be 'equitable *sharing* of loss between multiple tortfeasors.' " (*Gem Developers v. Hallcraft Homes of San Diego, Inc.* (1989) 213 Cal.App.3d 419, 426 [261 Cal.Rptr. 626].) A condition of equitable indemnity is that "there must be some basis for tort liability against the proposed indemnitor," usually involving breach of a duty owed to the underlying plaintiff. (*BFGC Architects Planners, Inc. v. Forcum/Mackey Construction, Inc.* (2004) 119 Cal.App.4th 848, 852 [14 Cal.Rptr.3d 721].) The doctrine applies only among defendants who are jointly and severally liable to the plaintiff. (*Ibid.*)

The trial court granted the motion for summary judgment based on its determination that there could be no basis for tort liability on Staben's part because Palacios was satisfied with the work Staben had performed under the parties' oral agreement. But Palacios's satisfaction with Staben's work does not absolve Staben of liability for the damage Stonegate may have suffered as a result of Staben's work if it was negligently performed. As Palacios notes, the issue on Palacios's cross-complaint for indemnity was an equitable sharing of responsibility for the loss that *Stonegate* suffered, for which Palacios is obligated to pay compensation as part of its settlement with Stonegate. (*Gem Developers v. Hallcraft Homes of San Diego, Inc., supra,* 213 Cal.App.3d at p. 429 [a "claim for equitable indemnification derives from the [plaintiff's] loss and award of damages"].)

In moving for summary judgment, Staben produced no evidence regarding its duty of care or the quality of its work on the Stonegate project. In its separate statement of undisputed material facts, Staben merely asserted that it had performed its work on the Stonegate project "in the same manner" as it did at the prior Moorpark project. But the only "evidence" Staben cited to support this asserted fact was Tom Staben's testimony that Ron Palacios told him the developer "wanted to use Thoroseal like they had used in Moorpark" and that "to [his] knowledge" "Thoroseal [was] used on each and every one of the retaining walls constructed by Mr. Palacios." But, as Palacios notes, this evidence says nothing about the manner in which Staben performed its work at either location. Because Staben presented no evidence on the quality or manner of its work at the Stonegate project, it failed to meet its initial burden of showing that an element of the negligence claim could not be established (i.e., breach of duty). Staben therefore failed to establish the absence of a predicate tort. The burden of producing evidence never shifted to Palacios to overcome the motion for summary judgment.

But even if it had, Palacios's evidence in opposition to the motion for summary judgment as to the correct way to apply Thoroseal and Staben's failure to apply it in a manner necessary to prevent the passage of water through the retaining walls was sufficient to create a triable issue of material fact as to whether Staben's work on the Stonegate project fell below the standard of care in the industry. We have already concluded that a subcontractor like Staben owes a duty of care to homeowners like Stonegate, and that evidence of Staben's standard of care is relevant to the question of its liability for negligence. The trial court therefore erred in granting the motion for summary judgment on Palacios's cross-complaint for indemnity.

## III. *APPEAL OF THE COST AWARDS*

Both Stonegate and Palacios filed notices of appeal from the postjudgment orders awarding costs to Staben as the prevailing party. In light of our decision reversing the judgment in favor of Staben following the nonsuit and reversing the summary judgment in favor of Staben on the cross-complaint for indemnity, Staben is no longer the prevailing party. We reverse the postjudgment cost orders. (*Peerless Lighting Corp. v. American Motorists Ins. Co.* (2000) 82 Cal.App.4th 995, 1017 [98 Cal.Rptr.2d 753]; *Kalivas v. Barry Controls Corp.* (1996) 49 Cal.App.4th 1152, 1163, fn. 6 [57 Cal.Rptr.2d 200].)

## DISPOSITION

The judgment in favor of Staben following the nonsuit and the summary judgment in favor of Staben, as well as the postjudgment orders regarding costs, are reversed and the matter is remanded for retrial. Appellants Stonegate and Palacios are awarded costs on appeal.

Boren, P. J., and Ashmann-Gerst, J., concurred.