[Civ. No. 2827. First Appellate District, Division One.—June 3, 1919.]

## B. MARY KLINGENSTEIN, as Administratrix, etc., Respondent, v. MIEHLE PRINTING PRESS AND MANUFACTURING COMPANY (a Corporation), Appellant.

[1] NEGLIGENCE — MOVING AND INSTALLATION OF PRINTING-PRESS — DEATH OF HELPER—PARTY LIABLE.—A drayman employed under a written contract with the seller of a printing-press to deliver the press "from the steamer to the pressroom" of the buyer, and to furnish at a given price per hour per man any labor desired by the seller to assist its employee in setting up the press, the seller having agreed with the purchaser to erect and put said press in first-class running order, is not liable for damages for the death of one of the persons employed by him to assist in the delivery of the press, and also to assist the employee of the seller in erecting the same, where the accident occurred after the press had been laid upon the pressroom floor of the buyer, and while the employee of the seller was engaged in the task of moving it to the particular place upon said floor where the work of its installation was to be performed.

[2] ID.—LIABILITY OF EMPLOYER FOR ACTS OF EMPLOYEE.—The seller of a printing-press is liable for the acts or omissions of its employee engaged in the installation thereof where the latter, who

---

1. Imputing servant's negligence to master, notes, L. R. A. 1915A, 763; 8 L. R. A. (N. S.) 635.

had been in the employ of the seller in that capacity for several years, had full charge of the work and the power of selection and control of those who were to assist him.

[3] ID.—ERRONEOUS ADMISSION OF PREJUDICIAL EVIDENCE—INSTRUCTIONS.—Where such employee of the defendant volunteered the statement that his expenses were being paid by "an insurance company," but this portion of his answer was stricken out by the court, and the subject thus opened being later adverted to, the court ruled out all evidence on the subject as improper, and instructed the jury to disregard all questions and answers touching the subject, the error, if any, growing out of the witness' volunteered remark was sufficiently cured.

APPEAL from a judgment of the Superior Court of Humboldt County. Clifton H. Connick and George H. Murray, Judges. Affirmed.

The facts are stated in the opinion of the court.

Frank McGowan, Walter H. Linforth and Mastick & Partridge for Appellant.

Mahan & Mahan and Coonan & Kehoe for Respondent.

RICHARDS, J.—This is an appeal from a judgment in plaintiff's favor and against the defendant Miehle Printing Press and Manufacturing Company for the sum of fifteen thousand dollars for damages arising out of the death of one Frederick Klingenstein, the husband of plaintiff, through the alleged negligence of said defendant. As to the codefendant McGaraghan the verdict and judgment exonerated him from liability.

There is no substantial dispute as to the facts of the case. On and prior to the seventh day of August, 1913, the defendant Miehle Printing Press and Manufacturing Company was the owner of a printing-press described as a No. 1 Pony Miehle Printing-press, which it on said day contracted to sell and deliver to the firm of Lambert & McKeehan, printers, at Eureka, the purchase price to be paid in installments during a period of two years thereafter, title to remain in the seller until the installments were fully paid. On August 27, 1913, the said defendant Miehle Printing Press and Manufacturing Company, in contemplation of the delivery of said press to the purchaser, entered into a written contract with its codefendant McGaraghan, a dray-

man of Eureka, wherein the latter offered to "unload, haul, and handle" said press and to convey the same "from the steamer to the pressroom of Lambert & McKeehan for the price of $7.50; we to furnish all necessary ropes, planks, tools, etc., and we to be responsible for damages done to property or persons while said press is in our care. And we agree to allow use of ropes, planks, tools, etc., free of charge to your erector while erecting press. Any labor desired by you to assist your erector in setting press will be furnished you by us on request at fifty cents per hour per man." This offer, which was upon one of the printed forms of the said Printing-press Company, was negotiated, signed, and accepted by the parties thereto at the pressrooms of the said purchasers of the press, and after an inspection of the premises by McGaraghan, accompanied by the agent of his said codefendant, during which it appeared that the press was to be delivered through a back way to the pressroom and admitted to the floor thereof through the back door. At the time this contract was entered into none of the immediate parties to it knew where the press was to be set up in the pressroom, since that, apparently, was a matter to be determined by the seller's erector, who was later to appear upon the scene. The press arrived at the steamer landing in Eureka on or about October 6, 1913, and on that day also one J. C. Nicholson also reached that city. Said Nicholson was an employee of the said defendant Printing-press Company, charged with the duty of erecting and installing said press. He had been engaged in the business of erecting printing-presses by his said employer for some eight or nine years, and his duties, as defined by himself when on the witness-stand on behalf of his said employer, were "to assemble the machine and put it in running order, handle the various parts of it." In the performance of these duties, according to his own statement, he was to uncrate the several parts of the press for the purpose of assembling, putting in place, and erecting the same. Nicholson had been sent to Eureka by his said employer in conformity with its agreement with the purchasers of the press providing that "the vendor agrees to send a competent man to erect and put said press in first-class running order." On reaching Eureka, Nicholson went to the pressroom and there determined the place upon the floor thereof where the press when erected was to stand, and directed the removal of

certain other machinery and appliances then occupying said floor so as to make room for the assembling and erection of the press. He then inquired as to what drayman was to haul the press to its destination, and was informed that McGaraghan had the contract so to do. He sought Mc-Garaghan and arranged for the delivery of the press on the following day, and for the engagement of two men who were to assist him in the installation of the press. Mc-Garaghan thereupon enlisted the services of the deceased, Frederick Klingenstein, and of one P. W. Davis, who were to assist him in the performance of his agreement for the drayage of the press, and were also to continue to assist Nicholson in the erection of the press after McGaraghan's duties in respect to its delivery were done. On the following morning McGaraghan with his said two assistants loaded the main body of the press, weighing about two tons, on his dray and hauled it to the rear of Lambert & McKeehan's printing office, unloading it in the alley, and, conveying it through the back door of the pressroom, deposited it on the pressroom floor inside the door. Nicholson was there, clad in working clothes and ready to begin the work of assembling and installing the press. The work of conveying the heavy portion of the press, which was crated and lying on the floor of the pressroom, was immediately entered upon by Nicholson and with the assistance of Klingenstein and Davis. McGaraghan went out to get some other parts of the machine, but presently returned, and was standing by while the work of moving the heavy crate in the direction of the spot which the press when fully assembled was to occupy. Mr. Nicholson suggested the advisability of putting rollers under the crate, but Davis thought it could be handled with a jack, and Nicholson apparently acquiesced in this suggestion. While the press was thus being moved across the floor, which at the time was greasy and slippery with oil, the crate tilted over and fell upon Klingenstein, causing his death, as a result of which this action was instituted by his widow against both of the defendants herein.

[1] It does not seem to be seriously contended that the plaintiff is not entitled to recover against one or the other of these defendants, the main question discussed upon this appeal being that at the moment of the accident it was Mc-Garaghan and not the appellant herein who was in charge

of the work of moving the crate containing said press across the pressroom floor, which work he was performing under the terms of his contract with his codefendant, and in the doing of which he was an independent contractor for whose acts or omissions of duty this appellant cannot be held responsible. We are unable to give our support to this contention upon the facts of this case, which we deem amply sufficient to have justified the jury in finding a verdict against the defendant (appellant) and in exoneration of McGaraghan. The contract of appellant with McGaraghan was that he should convey the press in question "to the pressroom floor" of its purchaser. This contract had been fulfilled when the press was laid upon the pressroom floor and when, as the evidence sufficiently showed, the appellant's employee Nicholson undertook the task of moving it to the particular place upon said floor where the work of its installation was to be performed. The two assistants of McGaraghan, who were his employees while his contract was being executed, became the employees of the appellant by the express terms of its agreement with McGaraghan from the moment Nicholson's duties began.

It is not necessary to further review the evidence which justified the jury in reaching this conclusion, but it might be pointed out that the acts of the appellant's employee, Nicholson, immediately attending and succeeding the death of Klingenstein, as testified to by himself, indicate that he considered himself as in charge of the situation at the time the casualty occurred, as, for example, he was actually occupied in helping to move the press when it fell upon Klingenstein; he directed Davis to hire another man to replace the deceased; he proceeded on the morrow to raise and uncrate the press; he paid on behalf of his employer the wages of Davis and of the successor of Klingenstein.

[2] It is contended by the appellant that Nicholson was a mere mechanic without authority in the premises, but the evidence of the nature, extent, and importance of Nicholson's past and present employment and duties does not support this view. His business was that of an erector or installer of printing-presses. He had been in the employ of the appellant in that capacity for several years. He was in full charge of the work of uncrating, assembling, and erecting this press, of selecting its location and of

putting it into operation. He had the power of selection and control of those who were to assist him in this work. He was, in fact, the appellant's sole representative on the ground at the time of the accident in which Klingenstein lost his life, and hence his acts or omissions in the premises must be held to be the acts or omissions of his employer, the appellant herein.

There are several assignments of error in the rulings of the trial court and in its instructions to the jury. We have examined these, but do not deem it necessary to refer to them in detail. As to the rulings of the court in the admission or rejection of certain evidence we find no prejudicial error. [3] Upon oral argument appellant's counsel waxed warm over the alleged misconduct of the plaintiff in respect to the question as to whether Nicholson's expenses at the trial were being paid by "an insurance company," as tending to prejudice the appellant's case in the minds of the jury; but the record shows that the basis for this inquiry was supplied by the witness Nicholson himself, who volunteered the statement that his expenses were thus being paid. This portion of his answer was stricken out by the court, and the subject thus opened being later adverted to, the court ruled out all evidence on the subject as improper, and instructed the jury to disregard all questions and answers touching the subject. We are satisfied that the error, if any, growing out of the witness Nicholson's volunteered remark was thus sufficiently cured.

As to the matter of the court's instructions we have examined these as a whole, and are satisfied that they fully, fairly, and adequately state the law of the case, and that whatever instructions asked by the appellant the court refused to give were fully covered by those which were given by the court.

Finding no error in this record, the judgment is affirmed.

Waste, P. J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 31, 1919.

Shaw, J., Melvin, J., Lawlor, J., Wilbur, J., and Angellotti, C. J., concurred.