[L. A. No. 12166. In Bank.—June 28, 1933.]

JOHN W. HALL, Appellant, v. BARBER DOOR COMPANY (a Corporation) et al., Respondents.

Hoye & Boehler and Walter W. Hoye for Appellant.

Gibson, Dunn & Crutcher, Tanner, Odell & Taft and Philip C. Sterry for Respondents.

WASTE, C. J.—Plaintiff appeals from a judgment entered upon the granting of a motion for nonsuit made by defendant at the close of plaintiff's case. Plaintiff also appeals from an order denying his motion for a new trial. The latter order is nonappealable and, for that reason, the appeal therefrom is dismissed.

The facts upon which plaintiff bases his action are as follows: In the latter part of the year 1927 the Central Manufacturing District, as owner, entered into a contract with William P. Neil Company, whereby the latter, as general contractor, agreed to construct a building to be known as the Produce Terminal Building, in Vernon, California. The defendant corporation, the Barber Door Company, was one of the subcontractors, under contract to install the doors in the building. The plaintiff in October of 1927 entered into a contract with the owner of the property for the use of one of the stalls in the building. This contract was entered into before the building was completed and obviously before either the owner or the plaintiff knew when the building would be completed. The agreement, pleaded as an exhibit to the answer, was not explicit as to the date when the tenancy was to start. It provided for a fixed payment, payable monthly, starting January 1, 1928, and continuing until January 1, 1948. The "Schedule of Terms" attached to the agreement and made a part thereof provided in part as follows:

"1. In the event that the premises above described are available for occupancy by Purchaser prior to the first day of January, 1928, the Purchaser may take possession of said premises at such time and without the payment of any additional money other than that specified in this agreement.

"2. The Purchaser agrees that its entry into occupancy of said premises shall constitute an acknowledgment that the same are suitable for its business and that the building and improvements thereon have been received by the Purchaser in good and first class condition. . . . "

It appears from the evidence that on December 1, 1927, plaintiff and his partner went into possession of the stall. It further appears that on that date the building was not entirely completed, but that plaintiff and his partner moved in with the permission and consent and, in fact, at the request of the superintendent of the owner. Shortly after the plaintiff took possession, the defendant corporation installed the heavy door leading to the stall. On December 6th the door was hung, but on that date the installation was not entirely complete. Between December 6th and December 8th nothing further was done on the door. On December 8th, plaintiff, in attempting to leave the premises, raised the door and, while stepping through the doorway, the door fell, seriously injuring his back. It is for the injuries so received that plaintiff brought this action against defendants. It was stipulated that defendant corporation was an independent contractor. At the close of the plaintiff's case defendant moved for a nonsuit on the following grounds:

1. That there was no evidence tending to show any duty owed by defendant to plaintiff.

2. That there was no evidence tending to show negligence on the part of defendant.

3. That there was no evidence tending to show that defendant's negligence, if any, was the proximate cause of the accident.

4. That the evidence showed that plaintiff was guilty of contributory negligence as a matter of law.

The trial court granted the nonsuit, hence this appeal.

The rules applicable to such an appeal are so well settled and have been enunciated so frequently by this court that no useful purpose would be served in elaborating on them in this opinion. Suffice it to say that on such an appeal every favorable inference fairly deducible from the evidence, and every favorable presumption arising from the evidence must be considered as facts proved by the plaintiff. If evidence is fairly susceptible to two constructions, or if one of several inferences may reasonably be made, the court must take the view most favorable to the plaintiff. If contradictory evidence has been given, it must be disregarded. The evidence must be taken most strongly against the defendant. (*Berger* v. *Lane,* 190 Cal. 443 [213 Pac.

45]; *Estate of Flood,* 217 Cal. 763 [21 Pac. (2d) 579].)

 When the evidence in the instant case is tested by these standards, we have no hesitancy in holding that from such evidence the jury could have inferred that defendant was negligent in installing the door; that defendant left the door in such a condition as to constitute an implied invitation to use it; and that defendant was negligent in failing to warn the plaintiff and others lawfully on the premises of the hidden danger of which defendant had knowledge or, by the use of ordinary care, should have had knowledge. The evidence from which we believe the jury could have inferred negligence in the foregoing respects on the part of defendant is as follows:

The door in question was about 17 feet wide and about 14 feet high, in two sections, its total weight being approximately 300 pounds. At each end of the door was attached a cable which passed over a drum or pulley fitted near the end of a shaft located near the ceiling. These drums or pulleys were held on to the shaft by two set-screws on opposite sides of the drum. Connected to the other end of each cable were heavy weights acting as counterbalances, weighing almost as much as the door. When the door was closed, these weights would be up and, when the door was open, they would be down near the floor. At the time of the accident on December 8th, the door was, as alleged in the complaint, not entirely installed. The installation of the door began on December 3d and the door was hung on December 6th. After hanging the door, the workmen who had installed it, in the presence of plaintiff, worked it up and down several times, and then left it suspended, that is, open. All during the period the workmen were installing the door, plaintiff and his partner were in possession of the stall and had moved in merchandise consisting of crates of fruits and vegetables, and were doing business. When the door was hung on December 6th, and the cables and weights attached, the set-screws holding the drums or pulleys on the shaft were not countersunk into the shaft, but were simply screwed down against the shaft. Certain safety catches which would have held the door up even in the absence of counterweights had not yet been installed. Between December 6th and 8th the plaintiff opened and shut the door several times. At the time of trial it was

stipulated "that at the time the door fell the setscrews holding the drum to which was attached the cable that supported the counter-balance weight had slipped; that the counterweight drum was held in position above the door by the two setscrews running through the collar of the drum, and pressing against the surface of the shaft; that said setscrews had not been countersunk into the shaft at the time of the accident". Attorney for the defendant qualified the above stipulation by the reservation that the stipulation did not include an agreement that the slipping of the set-screws caused the door to fall. However, the inference that such was the fact is readily deducible from the record. The evidence shows that the purpose of countersinking the set-screws into the shaft is to increase the safety factor. Defendant Barber testified that he knew that the door had been installed as it was and that the set-screws had not been countersunk. The shaft, after the accident, was deeply grooved under the set-screws, indicating where they had slipped around the shaft. The pulley or drum had turned on the shaft. An expert for plaintiff testified that on such a door the greatest strain or stress comes at the point of contact of the set-screws with the shaft.

Defendant Barber also testified that the door was installed by his men and, therefore, the jury could have inferred that such men knew plaintiff and his partner were occupying the stall in question, and had moved their merchandise therein and were open for business. Defendant also admitted that, although he knew the door had been hung and that the set-screws had not been countersunk, he did not give instructions to his men to warn the occupants of the stalls, or to others rightfully on the premises, not to use the doors, or that it was dangerous to use them, nor did he cause any warning to be posted to that effect. Plaintiff testified, as already pointed out, that after the men hung the door on December 6th, they worked it up and down in his presence. They at no time told him not to use it or that it was dangerous to use it. We think, from the above evidence, that the jury could have inferred that the door fell because the set-screws were not countersunk and that defendant was negligent in not countersinking them. We think it is also a justifiable inference from the above facts that defendant left

the door in such a condition as to constitute an implied invitation to anyone rightfully on the premises to use it. The jury could also have inferred that under the circumstances it was negligence on the part of the defendant not to warn the plaintiff and others rightfully on the premises of the hidden danger which it had created and of which it had knowledge.

From this *résumé* of the evidence it is apparent that there was sufficient evidence in the record to go to the jury on the question of negligence, if, in fact, defendant owed any duty of due care to plaintiff. Defendant strenuously contends that it owed no duty of care to plaintiff, with whom it had no contractual relation.

■ It is elementary, of course, that no tortious liability can be imposed on a defendant, even though he was negligent, unless defendant owed a duty of care to plaintiff. (*Dahms* v. *General Elevator Co.*, 214 Cal. 733 [7 Pac. (2d) 1013]; *Buckley* v. *Gray*, 110 Cal. 339 [42 Pac. 900, 52 Am. St. Rep. 88, 31 L. R. A. 862].) We turn now to a discussion of that question.

■ Both parties to this appeal discuss at some length the question as to the status of the plaintiff in taking possession of the premises before January 1, 1928, as far as the owner, the Central Manufacturing District, was concerned. We have no hesitancy in holding that when plaintiff went into possession on December 1, 1927, at the request, knowledge and consent of the owner, he went in under the lease as a tenant and, therefore, as an invitee of the owner. Although it is true that, under the contract, payments were not to start until January 1, 1928, it is also true that when the contract was entered into the parties did not know when the building, then in the course of construction, would be ready for occupancy. They, therefore, provided that payments should start January 1, 1928, evidently a date they were sure the building would be completed, but also provided in effect that the tenancy should start at an earlier date if the building was ready for occupancy before that time. As between the landlord and tenant, they agreed it was ready for occupancy on December 1, 1927. On that date, plaintiff went into possession under the contract and became a tenant of the landlord. As such tenant, it is our opinion the de-

fendant independent contractor owed to him a duty of due care.

It cannot be doubted that an independent contractor is responsible to an occupant of a building rightfully on the premises at the request or consent of the owner for any wrongful acts that may be committed by himself or his employees while the stipulated work is in progress and resulting in injuries to such occupant. The ground upon which this liability is based is the implied duty which the law casts upon the independent contractor, as the person in charge and control of the work, to see that the rights of other persons, rightfully on the premises, are not injuriously affected by the performance of the work. (*Charlock* v. *Freel,* 125 N. Y. 357 [26 N. E. 262] ; see, also, 38 A. L. R. 403; *Pettyjohn & Sons* v. *Basham,* 126 Va. 72 [100 S. E. 813], where the cases are exhaustively collected and commented upon.) Upon both principle and authority, it is clear that an independent contractor, who by his own negligence creates dangerous conditions during the progress of the work, should be held responsible for an injury occasioned by those conditions to one rightfully on the premises, and should be held liable for damage directly attributable to the failure to perform this duty. (*Oregon-Washington Ry. & Nav. Co.* v. *Branham,* 259 Fed. 555; *Cummings* v. *C. W. Noble Co.,* 143 Wis. 175 [126 N. W. 664] ; *Gardner* v. *Smith,* 7 Mich. 410 [74 Am. Dec. 722].)

In enforcing this liability, the decisions in this state and in other states have affirmed the existence of such a duty owed by an independent contractor to an occupant of a building upon which the contractor was working. In *Donnelly* v. *Hufschmidt,* 79 Cal. 74 [21 Pac. 546], a tenant in a lodging-house was injured by stumbling over materials left on a pathway by a contractor employed to make repairs. It was held that such tenant could recover from the contractor. In *Davis* v. *Pacific Power Co.,* 107 Cal. 563 [40 Pac. 950, 48 Am. St. Rep. 156], the person injured was the son and employee of tenant. The defendant had negligently installed a shaft in the leased premises, resulting in the injuries. The court held that "the plaintiff having a right to be where he was the defendant (independent contractor) owed him a duty of protection". (See, also, *Carey* v. *Baxter,* 201 Mass. 522 [87 N. E. 901] ; *Charles R. Robin* v. *Wins-*

*low,* 171 N. Y. Supp. 55; *Crane Elevator Co.* v. *Lippert,* 63 Fed. 942; *Kimber* v. *Gaslight & Coke Co.,* (1918) 1 K. B. 439.) It has also been held that an independent contractor owes a duty of due care to an employee of another independent contractor rightfully on the premises, a situation closely analogous to the situation here involved. The leading case is *Thrussel* v. *Handyside,* L. R. 20 Q. B. Div. 359. (See, also, cases collected 38 A. L. R. 471.)

We think the principle of the above cases applies to the facts of the present case. We are of the opinion that plaintiff was an invitee of the owner rightfully on the premises and that the defendant, under the doctrine of the above cases, owed to him a duty of due care.

■ Defendant independent contractor contends that as to it plaintiff was a mere licensee. For reasons already stated, we do not think this is so, but even if it were, the judgment of nonsuit would have to be reversed. As already pointed out, defendant installed the door and knew that the set-screws had not been countersunk. Under such circumstances, the jury could have found that defendant knew, or should have known, that persons rightfully on the premises were likely to use that door; that defendant knew or should have known that it would be dangerous to use the door under those circumstances. We think the jury could have inferred that as left by defendant there was an implied invitation to use the door. The jury could also have found that as left by defendant the door was a dangerous instrumentality within the meaning of that doctrine as recently enunciated by this court in *Dahms* v. *General Elevator Co., supra,* and that as constructed and left by defendant, it was in legal effect a trap of the existence of which it was defendant's duty to warn even licensees.

■ Defendants likewise contend the evidence conclusively showed plaintiff was guilty of contributory negligence as a matter of law in using the door, knowing it was not completely installed. This contention is without merit. Plaintiff had observed the men who installed the door work it up and down. ■ Even forgetfulness of a known danger is not sufficient of itself to constitute contributory negligence as a matter of law. (*Meindersee* v. *Myers,* 188 Cal. 498 [205 Pac. 1078].) We think that under the facts of this

case, the question of contributory negligence should have been left to the jury. (*Davis* v. *Pacific Power Co., supra.*)

The judgment appealed from is reversed.

Shenk, J., Seawell, J., Curtis, J., and Langdon, J., concurred.

Thompson, J., being disqualified did not participate herein.

Rehearing denied.